******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., dissenting. I agree with the majority that the language of General Statutes § 46a-60 (a) (1) is plain and unambiguous. I part ways with the majority, however, to the extent that it further concludes that applying the plain meaning of the statute to the facts of the present case would yield absurd or unworkable results. Accordingly, I respectfully dissent.

The majority correctly concludes that the language of § 46a-60 (a) (1) is plain and unambiguous in that it does not protect individuals "regarded as having" a physical disability. As the majority aptly notes, the contrast between the statutory language prohibiting an employer's discrimination on the basis of a physical disability versus a mental disability makes clear that the legislature did not intend to prohibit discrimination on the basis of *perceived* physical disabilities. General Statutes § 46a-51 (20) expressly includes within the definition of " '[m]ental disability' " individuals "regarded as having" a mental disorder, whereas the definition of " '[p]hysically disabled' " in § 46a-51 (15) does not include individuals "regarded as having" a physical disability. In light of this difference, it is apparent that the legislature did not intend to provide the same protection to those with perceived physical disabilities as it did to those with perceived mental disabilities. The fact that other legislatures have made similar distinctions suggests that the absence of the phrase "regarded as having" from the definition of " '[p]hysically disabled' " in § 46a-51 (15) was not mere happenstance but, rather, an intentional decision by our legislature. Compare Wis. Stat. § 111.32 (8) (c) (2011–12) (defining " '[i]ndividual with a disability' " as including individuals "perceived as having" physical or mental impairment), with Ga. Code Ann. § 45-19-22 (3) (Supp. 2013) (definition of " '[d]isability' " does not include *perceived* physical or mental disabilities). It is not our role to speculate about *why* the legislature decided to include the phrase "regarded as having" in § 46a-51 (20) but not in § 46a-51 (15). If the legislature intended to protect individuals with perceived physical disabilities, it is, of course, free to amend § 46a-51 (15) to include within the definition of " '[p]hysically disabled' " individuals "regarded as having" a physical disability.

After concluding that the language of § 46a-60 (a) (1) is plain and unambiguous, the majority posits that applying the plain meaning of § 46a-60 (a) (1) in the present case would lead to a bizarre result. More specifically, it posits that, "under the plain language of § 46a-60 (a) (1), if an employee has a chronic disease, the employer may not discharge the employee on that basis. If, however, the employee is undergoing testing that leads his employer to believe that he has a chronic

disease, the literal terms of § 46a-60 (a) (1) do not protect the employee from discharge on that basis, despite the fact that the employer's action, in both cases, was premised on the same discriminatory purpose. . . . That scenario is contrary to the very idea of an antidiscrimination statute and is inconsistent with the legislature's clear statement 'that discrimination based on a physical disability is prohibited.' " I disagree.

In my view, the majority misses the point. The legislature's clear statement is that "discrimination *based on a physical disability* is prohibited"; (emphasis added; internal quotation marks omitted); not that discrimination based on a *perceived* disability is prohibited. Although the majority's interpretation of the relevant statutory language may be the better public policy, and although the legislature might adopt that policy if the matter is brought to its attention, that is not sufficient reason for abandoning the plain and unambiguous directive in the statute itself. The fact that a better public policy exists does not mean that the expressed public policy "yields absurd or unworkable results . . . ." General Statutes § 1-2z.

Section 46a-60 (a) (1) affords an employee or prospective employee protection against an employer who refuses to hire or employ, or who bars or discharges from employment, "any individual . . . because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness . . . ." Thus, there are two groups of persons whom an employer might discriminate against: those who are members of the classes set forth in the statute, and those who are not members of a class set forth in the statute, but whom an employer mistakenly *believes* to be members of a protected class. The majority agrees that, according to its plain and unambiguous meaning, the statute protects those who fall within the first group but not the second. The majority then goes on to claim that the statute must be read to protect the second group because an employer that discriminates must harbor the same animus toward the second group that it did to the first. Thus, according to the majority, distinguishing between discrimination against the first and second groups would produce absurd results.

This distinction, however, is neither absurd nor unworkable. It simply does not provide as broad a protection as the majority wishes. Indeed, the legislature is free to make this exact type of distinction in passing legislation. See, e.g., *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 300, 307–308, 914 A.2d 996 (2007) (upholding as constitutional statute prohibiting smoking in restaurants and cafes but not in casinos or private clubs). Statutory language often reflects com-

promises that are made in order to garner the support necessary to obtain passage. Simply because a statute does not go as far as this court may wish does not make such compromises absurd. In fact, decisions like today's may have a chilling effect on similar, future legislation. Legislators who may be willing to support narrower legislation than that originally proposed might be unwilling to reach that compromise for fear that this court would upset that compromise under the guise that it produces "absurd" results.

The test under § 1-2z for what constitutes an absurd or unworkable result does not revolve around what the majority of this court determines to be better public policy. For this reason, I respectfully dissent.